1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

BOBBY J. STROUP,                    )        3:10-cv-00562-HDM (WGC)
                                    )
            Plaintiff,              )        **REPORT AND RECOMMENDATION**
                                    )        **OF U.S. MAGISTRATE JUDGE**
      vs.                           )
                                    )
GREGORY MARTIN, et. al.             )
                                    )
                                    )
            Defendants.             )
_____)

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 17.)[1] Plaintiff opposed (Doc. #41) and Defendants have replied (Doc. # 42). After a thorough review, the court recommends that Defendants' motion be granted.

## I. BACKGROUND

At all relevant times, Plaintiff Bobby J. Stroup (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 4) at 1.) The events giving rise to this litigation took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Gregory Martin, Marjorie Hecker, and Tony Jones. (*Id.* at 2, Screening Order (Doc. # 3) at 3, 5.)

_____

[1] Refers to court's docket number.

On screening, the court determined that Plaintiff states a colorable claim for deliberate indifference to a serious medical need under the Eighth Amendment. (Doc. # 3 at 5.) Plaintiff alleges that he made six requests for medical attention in five days due to extreme stomach pain and constipation. (Doc. # 4 at 3.) He asserts that on September 30, 2008, defendant Martin accused Plaintiff of lying and refused to discuss his medical problems. (*Id.* at 4.) On October 2, 2008, he contends defendant Hecker came to Plaintiff's cell in response to his request but refused any treatment. (*Id.*)  Later that day, Plaintiff alleges that he submitted an emergency grievance seeking treatment for extreme stomach pain and constipation; he received a reply indicating the would be admitted to the infirmary later that day. (*Id.*) Upon transfer to the infirmary, he avers that he was not examined and no tests were conducted. (*Id.*) Approximately nine hours later he was given two aspirin by a nurse, which he refused, informing the nurse aspirin would not relieve his pain. (*Id.*) That night, Plaintiff claims to have submitted another emergency grievance. (*Id.* at 5.)  Defendant Jones responded that Plaintiff had already been seen by medical that day. (*Id.*)  Plaintiff goes on to allege that on October 5, 2008, Plaintiff passed black stool, tests were conducted and he was rushed to the emergency room. (*Id.*) Plaintiff was treated for an acute, active, bleeding, peptic ulcer. (*Id.*) A biopsy revealed the presence of certain stomach bacteria that cause ulcers. (*Id.*) Plaintiff was returned to the ESP infirmary on October 6, 2008.  (*Id.*)  Plaintiff remained in the infirmary through October 23, 2008, when he saw defendant Martin again.  (*Id.*)  Plaintiff claims defendant Martin did not know the results of the biopsy, and Plaintiff was not started on treatment for the bacteria until February 13, 2009, despite multiple requests in the interim. (*Id.*)

Defendants now move for summary judgment, arguing that they provided Plaintiff with appropriate medical care and treatment with respect to his peptic ulcer, and that they are entitled to qualified immunity. (Doc. # 17.)

## II.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the

1   claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence

2   to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the

3   nonmoving party failed to make a showing sufficient to establish an element essential to that

4   party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at

5   323-25. If the moving party fails to meet its initial burden, summary judgment must be denied

6   and the court need not consider the nonmoving party's evidence. *See Adickes v.  S.H. Kress &*

7   *Co.*, 398 U.S. 144, 160 (1970).

8        If the moving party satisfies its initial burden, the burden shifts to the opposing party

9   to establish that a genuine issue of material fact exists. *See Matsushita Elec.  Indus.  Co.  v.*

10  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

11  the opposing party need not establish a material issue of fact conclusively in its favor. It is

12  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

13  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

14  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The

15  nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

16  that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions

17  and allegations of the pleadings and set forth specific facts by producing competent evidence

18  that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

19       At summary judgment, a court's function is not to weigh the evidence and determine the

20  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

21  While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

22  drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

23  significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations

24  omitted).

25                           **III. DISCUSSION**

26  **A.  Eighth Amendment Standard**

27       A prisoner can establish an Eighth Amendment violation arising from deficient medical

28                                  4

care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because '[t]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d at 1059. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware

5

of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *see also Snow v. McDaniel*, 2012 WL 1889774, at * 6 (9th Cir. May 25, 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To establish that a difference of opinion amounted to deliberate indifference, the inmate "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the course of treatment was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted); *see also Snow* , 2012 WL 1889774 at * 6 (quoting *Jackson*, 90 F.3d at 332).

**B. Plaintiff's Medical Records**

Plaintiff was seen by defendant Martin on September 3, 2008, for complaints of chronic constipation and a raised bump on his tongue. (Doc. # 19 (Ex. B-1) at 16, Sept. 3, 2008 entry.) He appeared in no acute distress. (*Id.*) Plaintiff was examined, and it was noted he was not experiencing nausea or vomiting, and his abdominal region appeared normal. (*Id.*) Plaintiff was

6

1  assessed as having mild (chronic) constipation. (*Id.*)  He was encouraged to increase his water

2  intake, and was prescribed Colace and Reguloid. (*Id.*; *see also* Doc. # 19 (Ex.  B-2) at 29,

3  Sept. 3, 2008 entry.)

4        Plaintiff was seen by defendant Martin again on September 11, 2008, for complaints of

5  chronic constipation. (Doc. # 19 (Ex. B-1) at 16, Sept.  11, 2008 entry.) He reported that he had

6  not had a large bowel movement for five days. (*Id.*)  Plaintiff was counseled that overuse of

7  laxatives can lead to laxative dependency. (*Id.*) Plaintiff reportedly stated, "I don't care I just

8  need the problem fixed." (*Id.*) Plaintiff did not appear to be in acute distress. (*Id.*)  An exam was

9  performed on the abdominal region which yielded normal results, and Plaintiff was assessed

10  as having chronic constipation. (*Id.*) He was prescribed Magnesium Citrate and was told to

11  discontinue the Reguloid. (*Id.*) He was also prescribed Metamucil powder and Colace, and was

12  advised to return to the clinic in one week. (*Id.*; *see also* Doc. # 19 (Ex.  B-2) at 29, Sept.  11,

13  2008 entry.)

14        Plaintiff was next seen by defendant Martin on September 16, 2008, for continued

15  complaints of constipation. (Doc. # 19 (Ex. B-1) at 17, Sept.  16, 2008 entry.) Plaintiff reported

16  he had a "blocked colon." (*Id.*) It was noted that custody officers reported Plaintiff had been

17  throwing away his fiber medication. (*Id.*) Plaintiff was again counseled that a possible

18  consequence of long term laxative use was laxative dependence. (*Id.*) Plaintiff reported that he

19  was only having a large bowel movement every three to five days. (*Id.*) Plaintiff appeared in no

20  acute distress. (*Id.*) An examination was performed of the abdominal region which revealed

21  nothing abnormal. (*Id.*) Plaintiff was assessed as having constipation. (*Id.*) He was counseled

22  to increase his water intake and follow up as needed. (*Id.*)

23        Plaintiff was seen at his cell door by nursing staff on September 18, 2008, regarding

24  continued complaints of constipation. (Doc. # 19 (Ex.  B-1) at 17, Sept.  18, 2008 entry.)

25  Plaintiff reported that he had a partial bowel movement that day, but not a full one.  (*Id.*)  He

26  also reported that he had not eaten for three days to prevent constipation. (*Id.*) Plaintiff

27  requested Milk of Magnesia to clean out his colon. (*Id.*) When Plaintiff was informed that his

28                                      7

provider would possibly admit him to the infirmary if his condition continued, Plaintiff stated "I will go to New York if he wants me to." (*Id*.)  It was noted that the provider would be notified. (*Id*.) Plaintiff was given Milk of Magnesia. (Doc. # 19 (Ex. B-2) at 30, Sept. 18, 2008 entry.)

Plaintiff was seen by defendant Martin again on September 30, 2008, for continuing complaints of constipation. (*Id*. at 18, Sept. 30, 2008 entry.)  Plaintiff reported that he had not had a bowel movement in six days, and demanded to have his colon cleansed. (*Id*.) It was noted that Plaintiff was very loud, argumentative and bullying.  (*Id*.)  Plaintiff was described as unwilling to listen to the underlying causes of chronic constipation. (*Id*.) It was also noted that staff and correctional officers reported that Plaintiff had thrown away his Metamucil and Milk of Magnesia. (*Id*.) When asked about this, Plaintiff reportedly responded, "I took it for a day and it didn't work so I refused it." (*Id*.) Plaintiff was counseled to take his medications as prescribed and to give them a chance to work. (*Id*.) Plaintiff replied, "all I need you to do is fix my problem." (*Id*.) An unremarkable exam was performed of the abdominal region, and Plaintiff was assessed with chronic constipation. (*Id*.) He was instructed to increase his activity and water intake. (*Id*.) He was prescribed Reguloid and instructed to return to the clinic in one week. (*Id*.; *see also* Doc. # 19 (Ex. B-2) at 31, Sept. 30, 2008 entry.)

Plaintiff was seen by nursing staff during the morning pill pass on October 2, 2008, and was described as very agitated and verbally abusive to staff. (Doc. # 19 (Ex. B-1) at 18, Oct. 2, 2008 entry.) He demanded medical treatment immediately, and he was advised that his provider would see those with medical kites that morning. (*Id*.) That same day, Plaintiff was admitted to the infirmary to have his bowel movements monitored. (*Id*., *see also* Doc. # 19 (Ex. B-2) at 31, Oct. 2, 2008 entry.)

Plaintiff submitted an emergency grievance form stating that he was experiencing stomach pain and requesting medical treatment on October 2, 2008, at 5:46 a.m. (Doc. # 41 at 21.)  The response, at 8:15 a.m., indicates that Plaintiff would be admitted to the infirmary for further medical treatment.  (*Id*.)  Plaintiff submitted another emergency grievance dated

1    October 2, 2008, at 11:00 p.m., stating that he was admitted for treatment related to stomach

2    pain, and requested further treatment.  (*Id.* at 24.)  A response on October 2, 2008, at 11:15

3    p.m., states that Plaintiff had been seen by medical that evening. (*Id.*)

4        A nursing staff entry on October 5, 2008, indicates that Plaintiff had no complaints

5    during that shift, and was taking his medication and meals as ordered. (Doc. # 19 (Ex. B-1) at

6    18, Oct. 5, 2008 entry.) Plaintiff's status continued to be monitored. (*Id.*) Another nursing

7    staff entry later that day indicates Plaintiff had passed a moderate sized black stool that was

8    guaiac positive.[2]  (*Id.* at 19, Oct. 5, 2008 entry.) Plaintiff's practitioner was called, and it was

9    ordered that he receive transport to William Bee Ririe Hospital.(*Id.*)Plaintiff was kept

10   overnight at the hospital. (*Id.*; *see also* Doc. # 19 (Ex. B-2) at 31, Oct. 5, 2008 entry.)

11       The unusual occurrence report dated October 5, 2008, similarly indicates that Plaintiff

12   had a bowel movement while admitted to the infirmary which was observed to be a medium-

13   sized black stool that was guaiac positive. (Doc. # 19 (Ex. B-3) at 41.) Plaintiff was assessed as

14   having a potential for fluid volume deficit and possible gastrointestinal bleed. (*Id.*) He was

15   ordered to receive transport to the hospital for evaluation and treatment. (*Id.*)

16       Upon discharge from the hospital, Plaintiff was prescribed Lisinopril and Prevacid and

17   was instructed to follow a low fat diet for two weeks. (*See* Doc. # 19 (Ex. B-3) at 47.)

18       Plaintiff returned from the hospital to ESP's infirmary on October 6, 2008.  (Doc. # 19

19   (Ex. B-1) at 19, Oct. 6, 2008 entry.) Plaintiff had been diagnosed as having a peptic ulcer.[3]

20   (*Id.*) He was put on Prilosec, Lisinopril, and a low fat diet for two weeks.  (*Id.*)  It was noted

21   that Plaintiff had no acute complaints at that time. (*Id.*)

22       Plaintiff was seen by defendant Martin on October 7, 2008, for follow up to the

23

24       [2]This indicates hidden occult blood in the stool.  Nat'l Lib. of Medicine of Nat'l Inst. of health, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/003393.htm (last visited June 6, 2012).

25       [3]This is a sore in the lining of the stomach most commonly caused by infection with a bacterium

26   called Helicobcter pylori. Nat'l Lib.  of Medicine of Nat'l Inst. of health, MedlinePlus, http://www.nlm.nih.gov/medlineplus/pepticulcer.html (last visited June 6, 2012). According to

27   defendant Martin, a peptic ulcer is a raw area in the stomach and/or intestinal lining.  (Doc. # 17-1 at 3, ¶ 11.)

28                                        9

gastrointestinal bleed and diagnosis of peptic ulcer on October 5, 2008. (Doc. # 19 (Ex. B-1) at 19, Oct. 7, 2008 entry.) It was noted that Plaintiff underwent an upper esophagogastroduodenoscopy which verified a peptic ulcer. (*Id*.) On stabilization, Plaintiff was discharged back to ESP. (*Id*.) On examination at ESP, Plaintiff denied further blood in his stool. (*Id*.) He was assessed as having peptic ulcer disease with gastrointestinal bleed and dyspepsia.[4] Aspirin was discontinued and he was prescribed Prilosec. (*Id*.; *see also* Doc. # 19 (Ex. B-2) at 31, Oct. 7, 2008 entry.)

On October 9, 2008, nursing staff noted a quiet shift with no complaints. (Doc. # 19 (Ex. B-1) at 19, Oct. 9, 2008 entry.) Plaintiff continued to be monitored. (*Id*.)

Plaintiff remained in the infirmary and was seen by defendant Martin for a follow up on October 23, 2008. (Doc. # 19 (Ex. B-1) at 20, Oct. 23, 2008 entry.) He appeared in no acute distress. (*Id*.) He denied further blood in his stool. (*Id*.) He was examined and assessed with a peptic ulcer with a history of gastrointestinal bleed and hypertension. (*Id*.) Plaintiff was counseled that Prilosec was the recommended treatment option for peptic ulcer disease and dyspepsia. (*Id*.) He was also cautioned not to take aspirin or similar drugs as they increase the risk for gastrointestinal bleed. (*Id*.) Plaintiff was discharged from the infirmary, and it was ordered that his blood pressure was to be monitored daily for seven days. (*Id*.; *see also* Doc. # 19 (Ex. B-2) at 33, Oct. 23, 2008 entry.)

On October 24, 2008, a letter was faxed to the hospital requesting Plaintiff's medical records and the biopsy report from Plaintiff's hospitalization on October 5 and 6, 2008. (Doc. # 19 (Ex. B-1) at 20, Oct. 24, 2008 entry.)

On November 2, 2008, Plaintiff sent a kite to defendant Martin requesting the biopsy results from the hospital. (Doc. # 41 at 34.)

On November 7, 2008, Plaintiff is noted as having refused a medical sick call. (Doc. # 19 (Ex. B-1) at 20, Nov. 7, 2008 entry.)

---

[4]Dyspepsia is otherwise known as indigestion. Nat'l Lib. of Medicine of Nat'l Inst. of health, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/0032600.htm.

On December 10, 2008, Plaintiff sent a medical kite asking defendant Martin when treatment for the H. Pylori bacteria would begin. (Doc. # 41 at 37.) In response, prison officials stated that defendant Martin attempted to meet with Plaintiff to discuss the labs on November 7, 2008, but Plaintiff refused to be seen. (*Id*.)

Plaintiff sent another medical kite on December 15, 2008, stating that he had not refused treatment for H. Pylori. (Doc. # 41 at 40.) In response, prison officials stated that an H. Pylori test was ordered, and if the results were positive, treatment would be issued. (*Id*.)

A nursing note on January 7, 2009, states that Plaintiff was unable to be seen as his provider was unavailable. (Doc. # 19 (Ex. B-1) at 20, Jan. 7, 2009 entry.) On January 9, 2009, there is a reference to an unusual occurrence for that date, but no unusual occurrence report has been provided in the record for this date. (*See* Doc. # 19 (Ex. B-1) at 21, Jan. 9, 2009 entry.)

Plaintiff was seen by defendant Martin on February 3, 2009, for complaints of an itchy rash on his right and left torso. (Doc. # 19 (Ex. B-1) at 21, Feb. 3, 2009 entry.) Plaintiff also reported he did not complete his full course of Pylera, the H. Pylori treatment, as he only received a six-day supply. (*Id*.) He denied dyspepsia or gastritis. (*Id*.) Plaintiff was examined and was assessed as having atopic dermatitis, and was prescribed medication for this condition. (*Id*.) He was also noted as having a history of H. Pylori, and dyspepsia/gastritis, that was resolved. (*Id*.; *see also* Doc. # 19 (Ex. B-2) at 34, Feb. 3, 2009 entry.) Plaintiff was prescribed a ten-day course of Pylera. (*Id*.)

## C. Declaration of Defendant Martin

Defendants submitted the declaration of Gregory Martin in support of their motion. (*See* Doc. # 17-1 at 2-4.) Defendant Martin has been employed by NDOC as a nurse practitioner at ESP for the past five years, with approximately fifteen years total experience as a nurse practitioner. (*Id*. ¶ 1.) According to defendant Martin, beginning in September 2008, Plaintiff had numerous complaints of constipation. (*Id*. ¶ 6.) Defendant Martin personally examined Plaintiff with regard to these complaints on numerous occasions, and his examinations

11

1    generally revealed Plaintiff did not have abdominal pain, acid indigestion or gastritis which

2    would have indicated symptoms of an ulcer. (*Id*.) He addressed Plaintiff's complaints of

3    constipation by prescribing Colace, Reguloid, Magnesium Citrate, Metamucil, and provided

4    counseling. (*Id*.) Defendant Martin was informed that Plaintiff had thrown away medications,

5    and when he confronted Plaintiff with this information, Plaintiff responded, "I took it for a day

6    and it didn't work so I refused it." (*Id*. ¶ 7.)

7           After at least four consultations with Plaintiff, he was admitted to the infirmary on

8    October 2, 2008, for monitoring of his bowel movements. (*Id*. ¶ 8.) On October 5, 2008,

9    Plaintiff notified staff he had a bowel movement, and upon review of the same, Plaintiff was

10   transported to the local hospital for evaluation. (*Id*. ¶ 9.)

11          Plaintiff underwent an esophagogastroduodenoscopy, which led to the diagnosis of a

12   peptic ulcer. (*Id*. ¶ 10.) Defendant Martin had a follow up consultation with Plaintiff on

13   October 7, 2008. (*Id*.) He performed an examination which revealed no nausea or vomiting and

14   a normal abdominal region, and during which Plaintiff denied further blood in his stool. (*Id*.)

15   Plaintiff did report mild dyspepsia. (*Id*.) Plaintiff was diagnosed with peptic ulcer disease with

16   gastrointestinal bleed and dyspepsia. (*Id*.) He was prescribed Prilosec, a proton pump inhibitor

17   which is the recommended treatment option for peptic ulcer disease and dyspepsia. (*Id*. ¶ 11.)

18          According to defendant Martin, Plaintiff's medical and pathology records were obtained

19   from the hospital sometime between October 24 and December 17, 2008. (*Id*. ¶ 12.)[5] A review

20   of the pathology report revealed the presence of H. Pylori bacteria. (*Id*.) This is a bacteria that

21   makes a person susceptible to peptic ulcer as it can break down the mucous lining in the

22   stomach. (*Id*. ¶ 13.)

23          Plaintiff underwent a H. Pylori test on December 17, 2008, and on January 9, 2009, his

24   test results were positive for H. Pylori and he was prescribed Pylera. (*Id*. ¶ 14.) On February

25   3, 2009, Plaintiff informed defendant Martin he had not been provided a "full course" of

26   _____

27          [5]The court assumes the reference to October 24, 200*7*, is a typo, and Defendants meant to refer
     to 200*8. (*See Doc. # 17-1 at 3, ¶ 12.)

28                                              12

1    Pylera, and defendant Martin thereafter prescribed an additional ten-day supply.  (*Id.* ¶ 15.)

2           Defendant Martin states that constipation is not a manifestation or symptom of a peptic

3    ulcer, and prior to October 5, 2008, Plaintiff did not exhibit any symptoms consistent with

4    peptic ulcer.  (*Id.* ¶ 16.)

5    **D.  Plaintiff's Opposition**

6           Plaintiff does not dispute that he was examined by defendant Martin on September 3,

7    11, 16, and 30, 2008; however, Plaintiff takes issue with the fact that after being seen by

8    defendant Martin on these occasions with the same complaints, defendant Martin did not refer

9    Plaintiff to a "higher level practitioner." (Doc. # 41 at 8, 16  ¶ 10.) Plaintiff also points out that

10   while defendant Martin diagnosed him with constipation, he was ultimately found to have a

11   peptic ulcer. (Doc. # 41 at 8.) Plaintiff also argues that Defendants failed to treat the H.  Pylori

12   bacteria for fourth months after he was diagnosed with the peptic ulcer. (*Id.*  at 11.)

13   **E.  Analysis**

14          Defendants do not appear to dispute that Plaintiff suffered from a serious medical need.

15   Rather, Defendants' argument focuses on the deliberate indifference prong of the Eighth

16   Amendment analysis.  For the reasons stated below, the court finds summary judgment should

17   be granted in Defendants' favor.

18          With respect to Plaintiff's allegations concerning the treatment provided to him

19   between September and the beginning of October of 2008, the court finds Plaintiff's conclusion

20   that Defendants acted with deliberate indifference is belied by the medical records.

21          The evidence establishes that Plaintiff was seen and evaluated at ESP for complaints of

22   constipation and stomach pain on September 3, 11, 16, 18, and 30, 2008 and October 2-5,

23   2008.  Plaintiff concedes as much. (Doc. # 19 at 16-19.) Plaintiff was admitted to the infirmary

24   on October 2, 2008,  so that his bowel movements could be monitored.  (*Id.*  at 18.) When

25   Plaintiff passed a black, guaiac positive stool on October 5, 2008, he was promptly taken to the

26   local hospital for evaluation. (*Id.*  at 19, 41.) He was diagnosed with a peptic ulcer. (*See id.*  at

27   19, Oct.  7, 2008 entry.) Upon being discharged back to ESP, Plaintiff was promptly seen for

28                                                                13

1  a follow up examination by defendant Martin on October 7, 2008. (*Id*.) Plaintiff was examined

2  by defendant Martin and was prescribed medication for treatment of the peptic ulcer. (*Id*.)

3  Plaintiff continued to be monitored in ESP's infirmary until he was discharged on October 23,

4  2008, with instructions to continue treatment for the peptic ulcer. (*Id*. at 19-20.)

5  The evidence establishes that Plaintiff received appropriate medical care in response to

6  his complaints of constipation and stomach pain. Insofar as Plaintiff argues that he should have

7  been referred to a "higher level provider," this merely amounts to a difference of opinion

8  between Plaintiff and defendant Martin with respect to the course of treatment chosen. In

9  order to establish that a difference of opinion rises to the level of deliberate indifference,

10 Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable

11 under the circumstances" and that the course of treatment was chosen "in conscious disregard

12 of an excessive risk to [the prisoner's] health." *Jackson*, 90 F.3d at 332 (citations omitted); *see*

13 *also Snow*, 2012 WL 1889774  at * 6 (quoting *Jackson*, 90 F.3d at 332).

14 Plaintiff reasons that the course of treatment chosen by defendant Martin was medically

15 unacceptable because Plaintiff was ultimately diagnosed with a peptic ulcer. However, the

16 evidence establishes that defendant Martin prescribed Plaintiff medications consistent with his

17 symptoms of constipation, and when Plaintiff's complaints did not subside, Plaintiff was

18 admitted to the infirmary for monitoring of his bowel movements. (Doc. # 19 at 16-19.) This

19 monitoring resulted in the discovery of a guaiac positive stool, and Plaintiff was promptly

20 transferred to the local hospital for further evaluation. (*Id*. at 18-19.) According to defendant

21 Martin, prior to the discovery of the guaiac positive stool, Plaintiff did not exhibit symptoms

22 consistent with a peptic ulcer. (Doc. # 17-1 at 4, ¶ 16.) There is no evidence that defendant

23 Martin's course of treatment was "medically unacceptable" under the circumstances. Nor does

24 the evidence in the record demonstrate "conscious disregard of an excessive risk to [Plaintiff's]

25 health." *Jackson*, 90 F.3d at 332.

26 The court will now address Plaintiff's allegation that Defendants were deliberately

27 indifferent to his serious medical need insofar as there was a delay in providing treatment, i.e.,

28

14

1  Pylera, for the presence of H. Pylori bacteria from the time Plaintiff was received back at ESP

2  from the hospital on October 7, 2008, until February 13, 2009.

3       According to Plaintiff, he had knowledge of the presence of H. Pylori bacteria on or

4  about November 18, 2008, when he received such notice from those who treated him at the

5  hospital. (Doc. # 41 at 5, ¶ 16.) He acknowledges receipt of Pylera on January 18, 2009, but

6  contends he was not given a full ten-day supply. (*Id.* at 5-6, ¶ 17.) Plaintiff admits he received

7  the ten-day supply on Pylera on February 13, 2009. (*Id.* at 6, ¶ 18.)

8       Defendants do not dispute that Plaintiff did not receive the full H. Pylori treatment until

9  February 13, 2009, some four months following his hospitalization; however, in order to

10  establish deliberate indifference based upon a delay in receiving medical treatment, a prisoner

11  must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060. Neither

12  Plaintiff's Complaint (Doc. # 4) nor his Opposition (Doc. # 41) reveal that the delay in

13  providing Plaintiff with the full dosage of Pylera caused Plaintiff any further injury.

14  Additionally, there is no evidence documenting further injury in Plaintiff's medical records.

15  (*See* Doc. # 19 (Ex. B-1).) With no evidence to establish that the delay in providing Plaintiff

16  with medication to treat the H. Pylori bacteria caused any further injury, the court cannot find

17  deliberate indifference on the part of Defendants based on the delay.

18       Accordingly, summary judgment should be granted in Defendants' favor.[6]

19                    **IV. RECOMMENDATION**

20       **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order

21  **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 17).

22  ///

23  ///

24  ///

25  ///

26

27       [6]Given the court's conclusion, it need not reach Defendants' qualified immunity argument.

28                         15

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: June 7, 2012.

WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE

16